IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY JOHNSON,

    Plaintiff,

vs.　　　　　　　　　　　　　　　　　　　　　　　　　　No. CIV 00-1186 JC/RLP

NEW MEXICO DEPARTMENT OF HEALTH,
FELIX ALDERETE, DANNY ROPER,
CORRINE DOMINGUEZ, and GLEN WOHL,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment or in the Alternative, for Qualified Immunity, filed June 27, 2001 *(Doc. 18)*, and Plaintiff's Motion for Partial Summary Judgment, filed July 2, 2001 *(Doc. 23)*. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendants' motion is well taken and will be granted. The Court further finds that Plaintiff's motion is not well taken and will be denied.

**I.**　　**Background**

Plaintiff Anthony Johnson was employed as a social worker with the Las Vegas Medical Center. Plaintiff worked in the out-patient unit with patients who had drug or alcohol abuse problems and were schizophrenics. Plaintiff's duties included monitoring clients' medications, completing paperwork for managed care, and handling certain financial matters.

On February 11, 1999, Plaintiff got into an argument during a staff meeting with

1

Defendant Glen Wohl over the placement of a client.  Plaintiff and others believed the client should be placed in a boarding home, while Defendant Wohl was against the action.  Later in the day, Defendant Wohl went to Plaintiff's office and again expressed his disagreement with placing the client in the boarding home.  After some more time passed, Plaintiff and Defendant Wohl got into a third and final argument.

After the final confrontation, Defendant Wohl went to the supervisors, Defendants Danny Roper and Corrine Dominguez, and accused Plaintiff of being under the influence of drugs. Defendant Wohl claimed that Plaintiff's speech was pressured, he appeared agitated, and his judgment impaired.  Defendant Wohl also claimed that Plaintiff's mood appeared to fluctuate, and his behavior was unusual.

In order to further observe Plaintiff, Defendant Dominguez and Lisa Lujan-Darley called Plaintiff into the office.  During the course of this meeting, both individuals viewed Plaintiff's behavior as unusual.  *See* Ex. H, attached to Defendant's Memorandum Brief in Support of Motion for Summary Judgment or in the Alternative, for Qualified Immunity ("Dfs.' Memo."), filed June 27, 2001 *(Doc. 19)*; *see also* Exhibit 10, attached to Plaintiff's Opposition to Defendant Summary Judgment ("Pl.'s Response"), filed June 27, 2001 *(Doc. 20)*.  For instance, Defendant Dominguez maintained that Plaintiff was extremely nervous; he could not sit still; he had rapid and pressured speech; he continuously rubbed his face and eyes.  *See* Exhibit H, attached to Dfs.' Memo.  Based upon these observations, Defendant Dominguez and Ms. Lujan-Darley decided that they had a reasonable suspicion to believe Plaintiff was on drugs, and they reported their beliefs to Defendant Roper.

Defendant Roper then called Plaintiff to his office and told him of the accusations that he

appeared to be on drugs. Defendant Dominguez was present during the meeting. Defendant Roper observed that Plaintiff's behavior was suspicious and different than usual because he was fidgeting, unusually stretching his arms, touching his face, and his pupils appeared dilated. *See* Exhibit I, attached to Dfs.' Memo. Defendants Roper asked Plaintiff if he would be willing to take a drug test. Plaintiff asked if he could speak to a lawyer or union representative. Defendant Roper agreed. Plaintiff left the office and unsuccessfully phoned somebody. Plaintiff went back and spoke with Defendant Roper about the drug test. Defendant Roper again asked Plaintiff if he was willing to submit to a drug test. Plaintiff agreed to take a drug test if Defendant Roper would take one also. Defendant Roper refused to take a drug test. Plaintiff was then sent home at 4:00 p.m. that day.

Once Plaintiff was sent home from work, he decided to go to the Northwestern Regional Hospital in Las Vegas to be observed and have his blood pressure taken. A nurse noted that Plaintiff's eyes did not appear dilated and his vital signs were normal. *See* Exhibit B, attached to Dfs.' Memo.

As a result of Plaintiff's refusal to submit to a drug test, Defendants began dismissal proceedings on February 22, 1999, and Plaintiff received a Notice of a Contemplated Action. Plaintiff presented an oral response to the Notice of Contemplated Action on March 2, 1999. At the oral response, Plaintiff outlined all of the events, responded to the allegations, and had the opportunity to provide additional information. Plaintiff was terminated pursuant to a Notice of Final Determination dated March 5, 1999.

On March 16, 1999, Plaintiff filed a Step 1 Grievance under the union contract through his union representative. Defendants denied the Step 1 Grievance on March 23, 1999, for two

reasons: (1) since Plaintiff was no longer an employee of the Las Vegas Medical Center, he was no longer covered by the union contract; and (2) no articles of the union contract were violated. *See* Exhibit O, attached to Dfs.' Memo.  On March 24, 1999, Plaintiff filed a Step 2 Grievance under the union contract which was subsequently denied for the same reasons as the Step 1 Grievance. *See* Exhibit R, attached to Dfs.' Memo.  Plaintiff filed a Step 3 Grievance under the union contract on April 8, 1999, which was also denied by the Defendants. *See* Exhibit S, attached to Dfs.' Memo.

In addition, Plaintiff appealed his termination decision to the State Personnel board on March 24, 1999.  The appeal resulted in a full adversarial proceeding, where witness testimony was presented.  After the hearing, the administrative law judge prepared a written recommendation which upheld Plaintiff's termination.  The State Personnel Board adopted the recommendation of the administrative law judge.

## II.    Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  When applying this standard, the court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir.1999).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Martin*, 190 F.3d at 1129 (citation omitted).  When the parties file cross motions for summary judgment, "we are entitled to assume that no evidence

needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997); *see also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

**III.    Analysis**

    **A.    Unreasonable Search (Count III)**

        **1.    Fourth Amendment Claim**

In Count III, Plaintiff claims that "the demand for urinalysis without a warrant was unreasonable and contrary to...the Fourth [A]mendment to the United States Constitution." *See* Appeal and Complaint, attached to Defendants' Notice of Removal (collectively "Complaint"), filed August 18, 2000 *(Doc. 1)*. Defendants now move for summary judgment on Count III by arguing that they had a reasonable suspicion to request a drug test from Plaintiff, and he refused to submit to the test without good cause. *See* Defs.' Memo. at 8-10.

A drug test required by a government employer for the purpose of detecting illegal drug use is a search subject to the Fourth Amendment and must be reasonable. *See National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 678-79 (1989); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 617-18 (1989); *Rutherford v. Albuquerque*, 77 F.3d 1258, 1260 (10th Cir. 1996). In the government employment context, a warrant will not be required where the intrusion is based on either reasonable suspicion or "special needs." *Skinner*, 489 U.S. at 619, 623-24; *see also Saavedra v. City of Albuquerque*, 73 F.3d 1525, 1531-32 (10th Cir.1996). Here, Defendant's motion does not indicate that this case falls under the "special needs" category.

5

In the absence of a "special needs" situation, drug testing of a government employee does not require a warrant, but must be based on individualized suspicion, or reasonable suspicion that the employee was engaging in unlawful activity involving controlled substances. *Saavedra*, 73 F.3d at 1532; *Jackson v. Gates*, 975 F.2d 648, 652-53 (9th Cir.1992), cert. denied, 509 U.S. 905 (1993). Thus, the Court's inquiry is whether the Defendants had reasonable suspicion to order a drug test of Plaintiff.

Reasonable suspicion depends both upon the content of information possessed and its degree of reliability. *See Alabama v. White*, 496 U.S. 325, 330 (1990). If the information possessed by the Defendants when they ordered the tests would create a reasonable suspicion that Plaintiff used or was impaired by illegal drugs, then the resulting drug test did not violate Plaintiff's Fourth Amendment rights. *See Saavedra*, 73 F.3d at 1532. In this case, the Court finds that the undisputed facts establish that Defendants had a reasonable suspicion to order a drug test.

Plaintiff got into an argument with Defendant Wohl over the placement of a client. The argument resulted in two additional confrontations between the individuals. Defendant Wohl then observed that Plaintiff's speech was pressured, he appeared agitated, his judgment impaired, and his behavior unusual. Based upon this observation, Defendant Wohl concluded that Plaintiff was under the influence of drugs, and he reported his suspicion to the supervisors, Defendants Roper and Dominguez. If the determination of reasonable suspicion rested solely on Defendant Whol's observations, the Court might question the reliability because of his previous argument with Plaintiff. However, Plaintiff's unusual behavior was corroborated by three additional individuals

6

who had worked with Plaintiff on previous occasions.

Once Defendant Wohl reported his suspicion, Defendant Dominguez and Lisa Lujan-Darley then called Plaintiff into the office for further observation. Both individuals observed Plaintiff's behavior as unusual. For example, Ms. Lujan-Darley maintains that Plaintiff was fidgety, speaking rapidly, and placing his hands to his eyes and head frequently. *See* Exhibit 10, attached to Pl.'s Response. Based upon their observations, Defendant Dominguez and Ms. Lujan-Darley decided they had "reasonable suspicion" to believe Plaintiff was on drugs, and they reported their beliefs to Defendant Roper. Defendant Roper then called Plaintiff into his office and observed his behavior. Defendant Roper observed that Plaintiff was fidgeting and squirming in his seat, unusually stretching and moving his arms and touching his face, and his pupils appeared dilated. By this point in time, there were three independent observations of Plaintiff's behavior that corroborated Defendant Wohl's observations.

Nevertheless, Plaintiff argues that the reliability of the observations by Defendants Dominguez and Roper and Ms. Lujan-Darley should be discounted because these observations were not arrived at independently, but flowed from Wohl's accusations. However, the subsequent observations by Plaintiff's supervisors were based on direct examinations and did not rest solely on the observations of Defendant Wohl. For instance, in *Rice v. Sielaff*, 581 N.Y.S. 2d 311 (A.D. 1st Dept. 1992), the undisputed testimony of several Department officials as to petitioner's dilated eyes, perspiring forehead and irrational behavior clearly supported a reasonable suspicion of drug usage sufficient to support the order that petitioner be tested. Furthermore, Plaintiff's supervisors had worked with him on previous occasions; therefore, they had the benefit of comparing his behavior in this instance with his past behavior. Thus, the

reliability of Defendant Wohl's observations is overshadowed by three independent observations of Plaintiff's supervisors.

Courts have found reasonable suspicion with much less corroboration. In *Bailey v. City of Baytown, Texas*, 781 F. Supp. 1210, 1215 (S.D. Tex.1991), the court found as a matter of law that an articulable basis for suspecting that the plaintiff had used drugs existed where the plaintiff's supervisor informed her superiors that the inside of the truck which the plaintiff had just driven, smelled like marijuana. In *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987), the court found that reasonable suspicion existed when information regarding an employee's drug use was provided by a fellow employee who was a known drug dealer. In these cases, the information provided by an informant was relied upon in determining whether there was reasonable suspicion. Yet, in this case, Defendants proceeded beyond the reliability of a sole informant (Defendant Wohl) and obtained three additional observations.

In summary, the undisputed facts demonstrate that Defendants had a reasonable suspicion to order Plaintiff to submit to a drug test. In addition to Defendant Wohl's observations, three additional individuals independently observed Plaintiff's unusual behavior. Accordingly, Defendant's motion for summary judgment regarding Count III is granted.

### 2. New Mexico Constitutional Claim

Plaintiff moves for partial summary judgment on Count III by arguing that the request for a drug test by Defendant was unreasonable under the New Mexico Constitution, Article II, Section 10. *See* Pl.'s Memo at 10. Plaintiff attempts to argue that based upon the facts of this case, Defendants should have obtained a warrant. In other words, Plaintiff is apparently arguing that even if a warrant is not required under the Fourth Amendment where the intrusion is based on

a reasonable suspicion, the New Mexico Constitution would still require Defendants to obtain a warrant. Thus, Plaintiff argues that Article II, Section 10 of the New Mexico Constitution should be interpreted more expansively than the Fourth Amendment to the United States Constitution.

As Plaintiff points out, "'[t]here is established New Mexico law interpreting Article II, Section 10 more expansively than the Fourth Amendment." *State v. Gomez*, 1997-NMSC-006, ¶ 24, 122 N.M. 777, 932 P.2d 1 (citing *Campos v. State*, 117 N.M. 155, 870 P.2d 117 (1994)). However, the Court's examination of New Mexico law does not reveal distinctive characteristics that command departure from federal law governing unreasonable searches in the government employment context when reasonable suspicion exists. Accordingly, Plaintiff's motion regarding Count III is denied.

      **B.    Due Process Claims (Counts IV and VII)**

           **1.    Substantive Due Process**

In Count IV, Plaintiff claims that "the termination without progressive discipline was so unfair as to violate Plaintiff's substantive due process rights." *See* Complaint. Defendants now argue that they are entitled to summary judgment on Count IV because the rules do not require progressive discipline. *See* Defs.' Memo. at 12.

"'Substantive' due process requires only that termination of [a protected] interest not be arbitrary, capricious, or without a rational basis." *Brenna v. Southern Colo. State College*, 589 F.2d 475, 477 (10th Cir.1978) (citations omitted). "[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'" *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115 (1992) (further quotations omitted). To "satisfy the 'shock the

9

conscience' standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* at 574. Rather, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.*

Plaintiff argues that his substantive due process rights were violated because a rule that allows any discipline "up to and including dismissal" is essentially no rule at all. *See* Pl.'s Response at 6-7. In other words, Plaintiff is arguing that Defendants lacked a clear standard for punishment. *See id.* The Court disagrees. Defendants' policy clearly states: "Employees who fail to submit to a urine or breath test without good cause shall be subject to disciplinary action up to and including dismissal." *See* Exhibit E, attached to Dfs.' Memo. Plaintiff admits that Defendant Roper informed him that failure to submit to a drug test could lead to discipline up to and including dismissal. *See* Plaintiff's Exhibit 2, attached to Plaintiff's Memorandum in Support of Partial Summary Judgment ("Pl.'s Memo."), filed July 2, 2001 *(Doc. 24)*. Thus, the undisputed facts show that Plaintiff was aware of this policy at the time he refused to take a drug test, and Plaintiff was aware that Defendants had the discretion to termination his employment. The Court finds that Defendants' actions were not arbitrary and certainly do not shock the conscience.

Nevertheless, Plaintiff goes on to argue that the more appropriate action in this case would have been for the Defendants to apply progressive discipline. Yet, nowhere in the policies is it mandated that progressive discipline be applied before dismissal. Instead, the policies allow Defendants to proceed directly to dismissal. Thus, Defendants' actions do not demonstrate a degree of outrageousness that shocks the conscience. Accordingly, Defendants' motion for summary judgment regarding Count IV is granted.

### 2. Procedural Due Process

In Count VII, Plaintiff claims that the "termination without just cause and by defendants' bias violates Plaintiff's rights to due process protected by the Fifth and Fourteenth Amendments of the United States Constitution and Article II, Section 18 of the New Mexico Constitution." Defendants argue that they are entitled to summary judgment on Count VII because Plaintiff received adequate pre-termination and post-termination due process. *See* Dfs.' Memo. at 10-12. Meanwhile, Plaintiff also moves for summary judgment on Count VII by arguing that Defendants violated procedural due process by failing to notify Plaintiff of the de facto application of a no tolerance policy. *See* Pl.'s Memo at 9.

Plaintiff does not argue that Article II, Section 18 of the New Mexico Constitution should be interpreted any more expansively than the Fourteenth Amendment to the United States Constitution. *See State v. Gomez*, 1997- NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1 (noting preservation requirements for assertion of a state constitutional right that has not been interpreted differently than its federal analog). The Court's analysis is therefore premised solely on federal due process principles.

In determining whether the government has deprived an individual of his procedural due process rights, the court engages in a two-pronged inquiry: (1) the court asks whether the individual possessed a protected interest giving rise to due process protection, and (2) if so, the court asks whether the government afforded the individual an appropriate level of process. *See Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir.1994); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due.") The

parties in this case do not dispute whether Plaintiff had a protected property interest. Therefore, the only issue is whether the Defendants afforded Plaintiff an appropriate level of process.

Defendants first maintain that Plaintiff received adequate pre-termination due process. *See* Dfs.' Memo. at 11. The Court agrees. A public employee with a property interest in continued employment is "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before termination. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Here, Plaintiff received a written letter informing him of his proposed termination. *See* Ex. F, attached to Dfs.' Memo. The letter outlined all of the reasonable suspicion observations, the state personnel rules, and advised Plaintiff that he had the opportunity to respond either orally or in writing. *See id.* Plaintiff presented an oral response on March 2, 1999, where he outlined all of the events, responded to the allegations, and provided additional information. *See* Exhibits. J, K, L, and M, attached to Dfs.' Memo. Thus, the Court finds that Plaintiff had adequate pre-termination due process.

Defendants also maintain that Plaintiff received adequate post-termination due process. *See* Dfs.' Memo. at 12. Again, the Court agrees. The Tenth Circuit has indicated in dicta that "[a] 'full post-termination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir.1994) (*quoting Melton v. City of Oklahoma City*, 928 F.2d 920, 939 (10th Cir.1991) (en banc) (Logan, J., dissenting)); *see also Langley v. Adams County*, 987 F.2d 1473, 1480 (10th Cir.1993). Here, Plaintiff appealed his termination to the State Personnel Board. *See* Exhibit G, attached to Dfs.' memo. Plaintiff was represented by a union official and then by

counsel. Plaintiff had advance notice of witnesses and exhibits used by Defendants. Plaintiff had the right to cross-examine the witnesses. A hearing was held before a hearing officer who made a written recommendation. Plaintiff submitted written exceptions to the hearing officer's recommendation.

However, Plaintiff moves for partial summary judgment regarding his procedural due process claim in Count VII. *See* Pl.'s Memo. at 9. Plaintiff claims that his procedural due process rights were violated because Defendants refused to consider any "good cause" explanation for refusing the drug test. Specifically, Plaintiff points to the testimony of Defendant Alderete where he states: "...I don't believe that there is a good cause to refuse to follow a supervisor's directive and to take a drug test." *See* Plaintiff's Exhibit 14 at 3, attached to Pl.'s Memo. Plaintiff then goes on to argue that the issue before the Court is whether Defendant Alderete's personal "zero tolerance" policy is consistent with state regulations which require Defendants to consider "good cause" explanations for a refusal to submit to a drug test. *See* Pl.'s Memo. at 9. The Court finds Plaintiff's argument unconvincing. The undisputed facts show that Plaintiff never provided Defendants with a "good cause" explanation at the time he refused the drug test. Plaintiff simply refused based on "principle." *See* Pl.'s Exhibit 9 at 2, attached to Pl.'s Memo. Furthermore, any explanation for refusing the drug test was taken into consideration by the Defendants during his pre-termination and post-termination hearing discussed above.

Plaintiff further argues that his procedural due process rights were violated because Defendants should have applied progressive disciple instead of terminating his employment. *See* Pl.'s Memo. at 9. In essence, Plaintiff maintains that he was not on clear notice that he would be dismissed if he refused to comply with the drug testing. Again, the Court finds Plaintiff's

argument unconvincing. As previously mentioned, Plaintiff admits that Defendant Roper informed him that failure to submit to a drug test could lead to discipline up to and including dismissal. *See* Plaintiff's Exhibit 2, attached to Pl.'s Memo. Thus, the Court finds that Plaintiff had sufficient notice that Defendants had the discretion to terminate him.

Accordingly, Plaintiff's motion for partial summary judgment regarding Count VII is denied. Defendant's motion for summary judgment regarding Count VII is granted.

### C. Contract Claims (Counts II and V)

Plaintiff claims that his union contract rights were violated because he was not allowed union or legal representation (Count II), and because he was not allowed to arbitrate his termination (Count V). Thus, having grounded these claims upon an alleged breach of the collective bargaining agreement, Plaintiff's right to recover is measured by the terms and conditions of that agreement. *See Jones v. International Union of Operating Engineers,* 72 N.M. 322, 325, 383 P.2d 571, 573 (1963).

Defendants move for summary judgment on Plaintiff's breach of contract claims (Counts II and V). In particular, Defendants argue that there was no breach of the union contract because (1) Plaintiff was allowed a reasonably opportunity to obtain legal counsel, and (2) Plaintiff never requested arbitration. *See* Dfs.' Memo. at 14-15. Meanwhile, Plaintiff also moves for partial summary judgment on his breach of contract claims. *See* Pl.'s Memo. at 11-12. Plaintiff first argues that he was not given a reasonable time to obtain legal counsel or union representation. *See id.* Plaintiff next argues that the collective bargaining agreement was violated because he was not allowed to proceed under the grievance and arbitration provisions of the union contract. *See id.*

With respect to Count II, Article 13, Section Two, Paragraph 2 of the collective bargaining agreement states: "An employee may refuse to answer questions of a superior that probe possible criminal conduct until the employee has obtained legal advice and/or counsel. The employee shall be given a reasonable period of time to secure counsel." *See* Exhibit 13, attached to Pl.'s Memo. The undisputed facts show that Defendants did allow Plaintiff a reasonable opportunity to obtain union representation or legal counsel. First, Defendant Roper allowed Plaintiff an opportunity to obtain union representation or legal counsel on February 11, 1999. In fact, Plaintiff did attempt to obtain such representation; however, he was unable to contact a representative. Defendant Roper than asked Plaintiff again if he was willing to submit to a drug test; however, Plaintiff refused. Plaintiff was then sent home at 4:00 p.m. that day. Thus, Plaintiff was still allowed to refuse drug testing until he obtained counsel. In fact, Plaintiff had more than ten days to obtain union representation or legal counsel since dismissal proceedings were not begun until February 22, 1999. Yet, Plaintiff has presented no evidence that he attempted to seek assistance other than the day of February 11. Thus, Plaintiff was allowed to refuse to answer questions of his superior until he received assistance. The undisputed evidence shows that Plaintiff simply took no further action until he was served with a letter notifying him of his proposed termination.

With respect to Count V, Plaintiff's Complaint states: "The refusal to arbitrate was a separate violation of the Contract." *See* Complaint. Seemingly, Count V is directed solely at the arbitration provisions of the collective bargaining agreement. Article 14 of the collective bargaining agreement states: "An individual employee may not invoke arbitration under this Article." *See* Exhibit 13 at 8, attached to Plaintiff's Memo. In addition, Article 14 states: "The

15

party seeking arbitration of a grievance shall serve a written demand for arbitration upon the other party...." *See id.* at 10.  As Defendants point out, Plaintiff never requested arbitration, so this claim should be dismissed.

Yet, Plaintiff attempts to broaden his Count V claim by arguing that Defendants violated the collective bargaining agreement when they refused to consider his "grievance/arbitration" because he was no longer an employee.  *See* Pl.'s's Memo. at 11-12.  Plaintiff is now no longer complaining just about arbitration - he is also complaining about the denial of grievance procedures.  Nevertheless, the Court finds this new argument unpersuasive.  Although Defendants felt that Plaintiff should not be allowed to grieve because he was no longer an employee, Defendants still proceeded to address the substantive issues raised in Plaintiff's grievances.  For instance, on March 23, 1999, Defendant Dominguez responded to Step 1 Grievance as follows: "The relief requested is denied because Mr. Johnson is not eligible for representation since he is not an employee and because no article(s) have been violated."  *See* Exhibit 11, attached to Pl.'s Memo.  Thus, the Court need not address whether a terminated employee is allowed to grieve under the collective bargaining agreement because, in this case, Plaintiff's grievances were still considered by Defendants.

Accordingly, Defendant's motion for summary judgment regarding Count II is granted. Plaintiff's motion for partial summary judgment regarding Count II is denied.

### D.      Arbitrary, Capricious, or Otherwise Unlawful Termination (Count I)

In Count I, Plaintiff claims that his termination was arbitrary, capricious, and otherwise unlawful for the following reasons:  (a) Defendants had no warrant; (b) Defendants failed to invoke progressive discipline; (c) Defendants failed to consider and apply the good cause

exception to the regulation; and (d) Defendants failed to accord Plaintiff reasonable accommodation in view of the Union Contract or Plaintiff's reasonable understanding of his rights, or both.  *See* Complaint.

The Court has addressed these arguments above.  Therefore, the Court finds:  (1) Defendants did not need a warrant because they had reasonable suspicion to order the drug test; (2) Defendants were not required to invoke progressive discipline because they had the discretion to proceed directly to dismissal; (3) Defendants did not fail to consider the good cause exception; and (4) Defendants did not violate the union contract because he was allowed a reasonable time to obtain counsel, and Defendants did in fact respond to the substantive issues of Plaintiff's grievances.

### E.     First Amendment Claim (Count VI)

Defendant moves for summary judgment on Plaintiff's First Amendment claim in Count VI.  *See* Defs.' Memo. at 13.  However, Plaintiff withdraws his First Amendment claim in Count VI.  *See* Opposition to Defendant Summary Judgment at 8, filed June 27, 2001 *(Doc. 20)*.  Accordingly, Plaintiff's motion for summary judgment regarding Count VI is granted.

### F.     Qualified Immunity

Finally, Defendants move for summary judgment based on qualified immunity.  *See* Dfs.' Memo. at 16.  Specifically, Defendants claim that Defendants Alderete, Roper, Dominguez, and Wohl are entitled to qualified immunity for the civil rights claims alleged against them in their individual capacities.  *See id.*  The Court does not need to reach the immunity question because all of Plaintiff's claims have been dismissed.  *See Bisbee v. Bey*, 39 F.3d 1096, 1100 (10th Cir.1994) (holding that the court must resolve whether plaintiff states a claim before addressing qualified

immunity).

### IV. Conclusion

For the reasons above, the Court finds that Defendants had a reasonable suspicion to order Plaintiff to submit to a drug test. The Court further finds that Plaintiff was afforded both substantive and procedural due process. The Court also finds that Defendants did not violate Plaintiff's rights under the union contract. Finally, the Court finds that Plaintiff's termination was not arbitrary or capricious. In addition, the Court finds that Plaintiff has withdrawn his First Amendment claim.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment or in the Alternative, for Qualified Immunity, filed June 27, 2001 *(Doc. 18)* is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment, filed July 2, 2001 *(Doc. 23)* is denied.

DATED July 27, 2001.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:
    James A. Burke, Esq.
    Santa Fe, New Mexico

Counsel for Defendant:
    Judith C. Herrera, Esq.
    Herrera, Long, Pound & Komer, P.A.
    Santa Fe, New Mexico